UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| ALIGN TECHNOLOGIES CORP., § | |
| *Plaintiff* § | |
| § | |
| § | |
| v. § | Civil Action No. 1:22-CV-00824-LY |
| § | |
| § | |
| ATLASSIAN US, INC., § | |
| *Defendant* § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

**TO: THE HONORABLE LEE YEAKEL**
     **UNITED STATES DISTRICT JUDGE**

Before the Court are Defendant's Motion to Transfer to the United States District Court for the Northern District of California, filed November 16, 2022 (Dkt. 24); Plaintiff's Response, filed December 7, 2022 (Dkt. 28); and Defendants' Reply, filed December 21, 2022 (Dkt. 29). The District Court referred the motion and related filings to this Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. 30

### I. Background

Plaintiff Align Technologies Corp. brings this trademark infringement suit against Defendant Atlassian US, Inc. Plaintiff is a New Orleans, Louisiana-based software developer that "specializes in providing company goal tracking and communication software for use in connection with business management." First Amended Complaint, Dkt. 19 ¶ 7. Plaintiff alleges that it has used the trade name and trademark ALIGN in connection with its business since 2012. *Id.* ¶ 8. Plaintiff

1

owns a federal registration (Reg. No. 6,234,390) for the mark ALIGN in connection with "providing temporary use of on-line non-downloadable software for use in the facilitation of productive conversations, namely, software for facilitating productive conversations between managers and employees and featuring templates for creating conversation guides, meeting agendas and recognition history reports." *Id.* ¶ 10. Plaintiff also has a pending application (Serial No. 97,155,099) to register the ALIGN mark for other goods and services. *Id.* ¶ 11.

Defendant is a subsidiary of Atlassian, Inc., an Australian software company and "major provider of team collaboration and project management software products." *Id.* ¶ 13. Although Defendant's headquarters are in San Francisco, California, it has offices throughout the United States, including in the Western District of Texas. *Id.* ¶¶ 2, 5.

In 2019, Defendant acquired AgileCraft, a Georgetown, Texas company that develops software and related services that allegedly compete directly with Plaintiff's products. *Id.* ¶ 14. Defendant later announced that it would rebrand AgileCraft as JIRA ALIGN and applied to register JIRA ALIGN for good and services related to its project management software (Serial No. 79,273,525). *Id.* ¶¶ 15, 18. Plaintiff has opposed Defendant's application, and the opposition is pending before the U.S. Patent and Trademark Office Trademark Trial and Appeal Board. *Id.* ¶ 17.

In its Complaint, Plaintiff alleges: (1) trademark infringement under Lanham Act Section 32(1)(a), 15 U.S.C. § 1114(1)(a); (2) federal unfair competition and false designation of origin under Lanham Act Section 43(a)(1), 15 U.S.C. § 1125(a)(1); (3) common law trademark infringement; and (4) common law unfair competition. Dkt. 19. Plaintiff seeks declaratory and injunctive relief, as well as monetary damages and attorneys' fees.

Defendant asserts various affirmative defenses and counterclaims in its Answer. Dkt. 23. Defendant alleges that Plaintiff did not own a registration for the ALIGN mark until October 30,

2020, when Plaintiff fraudulently acquired the mark from O.C. Tanner Company. *Id.* ¶ 7. Defendant seeks cancellation of Plaintiff's ALIGN registration on the grounds of abandonment, invalid statement of use, and fraudulent procurement.

In its Motion to Transfer Venue, Defendant asks the Court to transfer this case to the Northern District of California under 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses. Defendant emphasizes that its headquarters are in San Francisco, and argues that its "branding and marketing activities that gave rise to Plaintiff's claims are centralized in the San Francisco area." Dkt. 24 at 6. Defendant also points out that Plaintiff is based in New Orleans and "likely has no relevant witnesses or documents in this District or elsewhere in Texas." *Id.* Defendant contends that "the only apparent connection between Plaintiff and the Western District of Texas is that this is the home forum of Plaintiff's counsel, which is irrelevant to the transfer analysis." *Id.*[1]

Plaintiff responds that the Motion to Transfer should be denied because Defendant has not satisfied its burden to show that the Northern District of California "will clearly be more convenient" than this District. Dkt. 28 at 2. Plaintiff argues that transferring this case to the Northern District of California "would impermissibly shift the burden of inconvenience from Atlassian, the Defendant and movant, to Plaintiff, the Plaintiff and non-movant." *Id.* at 1.

## II. Legal Standards

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Courts have "broad discretion" in deciding whether to order a transfer under Section 1404(a). *In re Volkswagen*

---

[1] Defendant is correct that the location of counsel is not a factor under 28 U.S.C. § 1404(a). *In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004) ("The word 'counsel' does not appear anywhere in § 1404(a), and the convenience of counsel is not a factor to be assessed in determining whether to transfer a case under § 1404(a).").

*of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008). The ultimate inquiry is whether the destination venue is "clearly more convenient than the venue chosen by the plaintiff." *Id.* at 315. Whenever "a defendant is haled into court, some inconvenience is expected and acceptable." *Defense Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022). But "the fact that litigating would be more convenient for that defendant elsewhere is not enough to justify transfer." *Id.* The party seeking transfer must "clearly establish good cause for transfer based on convenience and justice." *Id.*

The preliminary question under Section 1404(a) is whether a civil action "might have been brought" in the destination venue. *Volkswagen*, 545 F.3d at 313. If the answer is yes, then the court must weigh the private and public interest factors set forth in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), to determine whether the destination venue is "clearly more convenient than the venue chosen by the plaintiff." *Volkswagen*, 545 F.3d at 315.

> The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*Id.* (citations omitted). These factors are not necessarily exhaustive or exclusive, and none is of dispositive weight. *Id.*

A plaintiff's choice of forum is not an independent factor within the Section 1404(a) analysis. *Id.* at 315 n.10. Instead, "a plaintiff's choice of forum corresponds to the burden that a moving party must meet." *Id.* Thus, "[a]lthough a plaintiff's choice of venue is not a distinct factor in the venue transfer analysis, it is nonetheless taken into account as it places a significant burden on the movant to show good cause for the transfer." *Id.*

### III. Analysis

As the party seeking a transfer under Section 1404(a), Defendant "must show good cause" by "clearly demonstrating that a transfer is for the convenience of parties and witnesses, in the interest of justice." *Defense Distributed*, 30 F.4th at 433 (cleaned up).

### A. Preliminary Inquiry

The preliminary inquiry under Section 1404(a) is whether this case "might have been brought" in the Northern District of California. The general venue statute allows a plaintiff to sue in a judicial district in which "any defendant resides, if all defendants are residents of the State in which the district is located," or "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b). This suit could have been filed in the Northern District of California because Defendant's principal place of business is in that district. Accordingly, this Court must address the private and public factors to determine whether transfer is warranted.

### B. Private Interest Factors

#### 1. Relative Ease of Access to Sources of Proof

Defendant argues that this factor favors transfer because "Atlassian is the accused infringer, and the relevant evidence relating to its selection of the JIRA ALIGN trademark and its marketing and promotion of the JIRA ALIGN product and other JIRA-brand products is located in Northern California and Oregon—much closer to the Northern District of California than this District." Dkt. 24 at 12. Defendant emphasizes that "San Francisco is also home to Atlassian's U.S. headquarters, further tipping the scales in favor of transfer." *Id.*

In response, Plaintiff avers that all the relevant documentary evidence in this case is electronic and stored on the parties' servers. Plaintiff argues that: "It is unlikely that either party will need to

5

conduct an onsite investigation or have access to physical evidence to investigate the claims at issue. Consequently, it will be 'equally easy or difficult to access those sources from anywhere connected to the Internet.'" Dkt. 28 at 7 (quoting *Caldwell v. Medina*, No. 1:19-CV-524-RP, 2019 WL 12449827, at *3 (W.D. Tex. Sept. 23, 2019)). Plaintiff argues that it is not highly relevant that Defendant's evidence is stored electronically on servers in San Francisco.

Defendant does not dispute that the relevant evidence is stored on its servers and that Plaintiff will be able to access those documents electronically. Defendant argues that this factor is relevant nonetheless, citing the Fifth Circuit's statement in *Volkswagen* that the fact that "access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments [because of advances in copying technology and information storage] does not render this factor superfluous." 545 F.3d at 316.

The Fifth Circuit has clarified that: "The location of evidence bears much more strongly on the transfer analysis when, as in *Volkswagen*, the evidence is physical in nature." *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022). Because "most, if not all, of the records in this case are likely to be exchanged electronically, it is equally easy or difficult to access those sources from anywhere connected to the Internet." *Caldwell*, 2019 WL 12449827, at *3. The Court finds that the relative ease of access to evidence is not highly relevant in this case.

Plaintiff also disagrees that the "the bulk" of the evidence in this case will come from Defendant. Plaintiff argues that other documentary evidence relevant to the parties' claims and counterclaims in this case is located at Plaintiff's offices in New Orleans and at Defendant's offices in Georgetown, Texas. Dkt. 28 at 8-10. Thus, while Defendant is correct that it would be much more convenient for *Defendant* to litigate this case in its home district, transferring venue would merely shift the inconvenience to Plaintiff. *See Baylor Univ. v. Baylor Youth Found., Inc.*, No. 6-

6

21-CV-992-ADA, 2022 WL 17732432, at *5 (W.D. Tex. Oct. 11, 2022) (finding that sources of proof factor weighed against transferring the case to district where the defendant's records were located because it would have merely shifted the expense and inconvenience to the plaintiff); *Mitchell v. McKibbon Hotel Grp., Inc.*, 2018 WL 1887295, at *2 (W.D. Tex. Feb. 22, 2018) (denying transfer and noting that "[a]lthough it would be more convenient for defendants to litigate in Houston, transferring venue would merely shift the inconvenience to plaintiffs"). For these reasons, this factor does not support transfer.

### 2. Availability of Process to Secure the Attendance of Witnesses

Under the second private interest factor, courts consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order. *Defense Distributed*, 30 F.4th 414. A court may subpoena a witness to attend trial only "within 100 miles of where the person resides, is employed, or regularly transacts business in person." FED. R. CIV. P. 45(c)(1)(A). This factor generally supports transfer when more non-party witnesses reside within the proposed venue than in the plaintiff's chosen venue. *See Volkswagen*, 545 F.3d at 316.

Defendant has identified only one non-party witness in the Northern District of California: Megah Narayan, a former employee who oversaw and managed Defendant's selection of the JIRA ALIGN trademark. Defendant argues that it "has no indication that Ms. Narayan would willingly participate in this litigation, and she should therefore be presumed unwilling under this factor." Dkt. 24 at 14 n. 3.

Plaintiff has identified one non-party witness who resides in New Orleans and one non-party witness in Nashville, Tennessee. Plaintiff identifies no non-party witnesses who reside in this District. Accordingly, this factor weighs slightly in favor of transfer. *See Mallory v. Lease*

*Supervisors, LLC*, No. 3:17-CV-3063-D, 2018 WL 1457250, at *4 (N.D. Tex. Mar. 23, 2018) (finding that the convenience of one witness "slightly" favored a transfer).

### 3. Costs of Attendance for Willing Witnesses

The third private interest factor considers the cost of attendance for willing witness and "primarily concerns the convenience of nonparty witnesses." *Id.* Although not determinative, courts have found that this is the most significant factor in deciding a motion to transfer. *Id.*

Defendant argues that the Northern District of California is more convenient for its "key witnesses" since "all but one" reside in that district. Dkt. 24 at 15. Defendant identifies as key witnesses several of its employees and former employee Ms. Narayan, who Defendant also identified as a non-willing witness. *Id.* Plaintiff argues that this District is more convenient for its key witnesses. Plaintiff identifies as its key witnesses two employees who reside in New Orleans and one non-party witness who resides in Georgetown, Texas. Dkt. 28 at 13.

As stated, this factor primarily concerns the convenience of the non-party witnesses, and courts assign "little weight" to the convenience of the parties' employees. *Mallory*, 2018 WL 1457250, at *4. Because each party has only identified one non-party witness, this factor is neutral and does not favor transfer.

### 4. All Other Practical Problems

The fourth private interest factor is "all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Id.* at 315. Defendant has identified no other practical problems that might arise if this case is tried in this District. Accordingly, the fourth private interest factor also weighs against transfer.

## C. Public Interest Factors

### 1. Administrative Difficulties

The first public interest factor concerns administrative difficulties arising from court congestion. According to the most recent published Federal Court Management Statistics, both districts are similarly busy. Dkt. 24-10. However, the median time to trial for civil cases in the Northern District of California is 34.7 months, compared with 28.3 months in this District. *Id.* This factor weighs slightly against transfer.

### 2. Local Interest in the Litigation

"This factor generally favors the venue where the acts giving rise to the lawsuit occurred." *Spiegelberg v. Collegiate Licensing Co.*, 402 F. Supp. 2d 786, 792 (S.D. Tex. 2005). Defendant argues that this factor supports transfer, as "the Northern District of California has a significant connection to the controversy because the operative facts underlying the controversy occurred there, Atlassian has its U.S. headquarters there, and California has an interest in ensuring corporations headquartered there receive the protections afformed them under the law." Dkt. 24 at 19. Plaintiff argues that this District also has an interest in this case because (1) Defendant has hundreds of employees in this District; (2) Defendant has offered and continues to offer its infringing services in this District; and (3) Texas has an interest in protecting its consumers from Defendant's infringing activity.

The Court finds that both districts have an interest in this litigation. Because Defendant offers no convincing reason why residents of the Northern District of California have a greater interest in this dispute than residents of this District, this factor weighs against transfer.

### 3. Familiarity with the Law

The third public interest factors concerns the familiarity of the forum with the law that will govern the case. This suit involves infringement and unfair competition claims arising under both federal law and Texas state law. While both forums are familiar with federal law, the Western District of Texas has more familiarity with Texas state law claims, so this factor weighs slightly against transfer. *See Scivation, Inc. v. Xtend5, LLC*, No. 1:20-CV-00986-RP, 2021 WL 2177254, at *2 (W.D. Tex. May 28, 2021), *R. & R. adopted*, 2021 WL 8083330 (W.D. Tex. June 29, 2021); *Healthpoint, Ltd. v. Derma Scis., Inc.*, 939 F. Supp. 2d 680, 695 (W.D. Tex. 2013) (finding that a Texas federal court would be better equipped than a New Jersey court to apply Texas common law of unfair competition).

### 4. Conflict of Law Issues

There are no conflict of law issues. Both parties agree that this factor is neutral.

## D. Conclusion

In sum, because most of the factors weigh against transfer or are neutral, Defendant has not sustained its burden to show good cause for the transfer by "clearly demonstrating" that a transfer is "for the convenience of parties and witnesses, in the interest of justice." *Volkswagen*, 545 F.3d at 315. "When the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Defense Distributed*, 30 F.4th at 433. Accordingly, the Court recommends that Defendant's Motion to Transfer should be denied.

## IV. Recommendation

For these reasons, this Magistrate Judge **RECOMMENDS** that the District Court **DENY** Defendant's Motion to Transfer to the United States District Court for the Northern District of California (Dkt. 24).

It is **FURTHER ORDERED** that this case be **REMOVED** from this Magistrate Judge's docket and **RETURNED** to the docket of the Honorable Lee Yeakel.

### V.  Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within 14 days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on February 9, 2023.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE